ROBERT C. BROWN, Respondent, *v.* MANUFACTURERS TRUST COMPANY et al., Appellants, Impleaded with Others.

318

Argued May 27, 1938; decided July 7, 1938.

*Leonard P. Moore* and *Charles Pickett* for appellants. The stock subscription agreement is unambiguous, and the trial court erred in admitting parol evidence to explain its meaning. (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *Halsted* v. *Globe Indemnity Co.*, 258 N. Y. 176; *Rosenbaum* v. *Schatia*, 272 N. Y. 67; *Matter of Stone*, 272 N. Y. 121; *Lossing* v. *Cushman*, 195 N. Y. 386; *Gray* v. *Shepard*, 147 N. Y. 177; *Mecca Realty Co.* v. *Kellogg Toasted Corn Flakes Co.*, 166 App. Div. 74; *McConnell* v. *Allen*, 193 N. Y. 318; *Talmage* v. *Third Nat. Bank*, 91 N. Y. 531; *People ex rel. Comstock* v. *City of Syracuse*, 59 Hun, 258; 128 N. Y. 632; *Williams* v. *People*, 24 N. Y. 405; *Matter of Goddard*, 94 N. Y. 544; *United States* v. *Thoman*, 156 U. S. 353; *Cooke* v. *State Nat. Bank*, 52 N. Y. 96.) An undertaking by a national bank to return installments paid on account of the purchase price of stock purchased from it would have been *ultra vires*, unenforcible and void. (*Duncomb* v. *N. Y., H. & N. R. R. Co.*, 84 N. Y. 190; *Awotin* v. *Atlas Exchange Bank*, 295 U. S. 209; *Brown* v. *Fourth & First Nat. Bank*, 171 Tenn. 371; *Plumlee's Admx.* v. *Citizens Nat. Bank*, 271 Ky. 226; *Kimen* v. *Atlas Exchange Nat. Bank*, 92 Fed. Rep. [2d] 615; *Goess* v. *Ehret*, 13 Fed. Supp. 630; *Oppenheimer* v. *Harriman Nat. Bank & T. Co.*, 301 U. S. 206;

*Adams* v. *Cribbis*, 17 Fed. Supp. 723; *Second Russian Ins. Co.* v. *Miller*, 268 U. S. 552; *St. Louis R. R. Co.* v. *Terre Haute R. R. Co.*, 145 U. S. 393; *Thomas* v. *City of Richmond*, 12 Wall. 349; *Smith* v. *Brady*, 17 N. Y. 173; *Fokine* v. *Shubert*, 210 App. Div. 468; *D' Ugo* v. *Cirenza*, 131 App. Div. 145.) Plaintiff cannot recover on any theory that the contract required refund of the payments. (*Heller* v. *Pope*, 250 N. Y. 132; *Rosenthal* v. *American Bonding Co.*, 207 N. Y. 162; *Windmuller* v. *Pope*, 107 N. Y. 674; *DeForest Radio Telephone & Telegraph Co.* v. *Triangle Radio Supply Co.*, 243 N. Y. 283; *Ressig* v. *Waldorf-Astoria Hotel Co.*, 185 App. Div. 4; 229 N. Y. 553; *Nieman-Irving & Co.* v. *Lazenby*, 263 N. Y. 91; *Bowen* v. *Horgan*, 259 N. Y. 267; *Rosenthal Paper Co.* v. *National Folding Box & Paper Co.*, 226 N. Y. 313; *Saperstein* v. *Mechanics & Farmers Sav. Bank*, 228 N. Y. 257; *City National Bank* v. *McCann*, 193 Ark. 967; *Atwater* v. *Stromberg*, 75 Minn. 277.) Plaintiff cannot recover on any theory that the subscription agreement was *ultra vires*. (*National Bank* v. *Stewart*, 107 U. S. 676; *Thompson* v. *Saint Nicholas Nat. Bank*, 146 U. S. 240; *Lantry* v. *Wallace*, 182 U. S. 536; *Walden Nat. Bank* v. *Birch*, 130 N. Y. 221; *Harriman Nat. Bank & Trust Co.* v. *Perry*, 86 Fed. Rep. [2d] 641; *Lantry* v. *Wallace*, 97 Fed. Rep. 865; *Singleton* v. *Harriman*, 152 Misc. Rep. 323; 241 App. Div. 857; *Union National Bank* v. *Hunt*, 76 Mo. 439; *Oppenheimer* v. *Harriman Nat. Bank & Trust Co.*, 301 U. S. 206; *Walden Nat. Bank* v. *Birch*, 130 N. Y. 221; *Longley* v. *Coons*, 244 App. Div. 391; 268 N. Y. 712.) The merger was not an anticipatory breach of contract entitling plaintiff to recover past payments. (*Merry Realty Co.* v. *Shamokin & Hollis Real Estate Co.*, 230 N. Y. 316; *Nugent* v. *Supervisors*, 19 Wall. [U. S.] 241; *Town of East Lincoln* v. *Davenport*, 94 U. S. 801; *Bates County* v. *Winters*, 112 U. S. 325; *Pope* v. *Board of Commissioners*, 51 Fed. Rep. 769; *Sprague* v. *Illinois R. R. Co.*, 19 Ill. 173; *Mayfield* v. *Alton Ry., Gas & Electric Co.*, 198 Ill. 528; *Bish* v. *Johnson*,

21 Ind. 299; *Atchison, C. & P. Rd. Co.* v. *Board of Commissioners,* 25 Kan. 261; *Union Hotel Co.* v. *Hersee,* 79 N. Y. 454; *Myers* v. *Sturgis,* 123 App. Div. 470, 197 N. Y. 526.)

*William I. Hart* and *Joseph R. Truesdale* for respondent. The subscription agreement was *ultra vires.* The plaintiff may recover his subscription payments with interest. (*Longley* v. *Coons,* 244 App. Div. 391; *Jackman* v. *Continental Nat. Bank,* 16 Fed. Rep. [2d] 728; *Wallace* v. *Hood,* 89 Fed. Rep. 11; *Logan County Nat. Bank* v. *Townsend,* 139 U. S. 67; *Citizens Central Nat. Bank* v. *Appleton,* 190 N. Y. 417; 216 U. S. 196; *Rankin* v. *Emigh,* 218 U. S. 27; *Aldrich* v. *Chemical Nat. Bank,* 176 U. S. 618; *White* v. *President of Franklin Bank,* 22 Pick. [Mass.] 181; *Coyne* v. *Chatham Phenix Nat. Bank & Trust Co.,* 155 Misc. Rep. 656.) Even though the contract were not *ultra vires* the plaintiff would be entitled to recover. (*Fleischman* v. *Furgueson,* 223 N. Y. 235; *Schoelkopf* v. *Coatsworth,* 166 N. Y. 77; *Heller* v. *Kalisch,* 141 App. Div. 205; *Sanford* v. *Brown Bros. Co.,* 208 N. Y. 90; *American Aniline Products, Inc.,* v. *Mitsui & Co.,* 190 App. Div. 485; *Liondale Mercantile Co.* v. *Gerber,* 197 App. Div. 345; *Rogers* v. *Straub,* 75 Hun, 264.) Upon the merger it became impossible for the bank to perform its agreement with the plaintiff. This constituted an anticipatory breach of contract giving the plaintiff an immediate right of action to recover the sums paid to the bank under the agreement. (*Goebbel* v. *Gross,* 153 Misc. Rep. 637; *Choate* v. *Beebe,* 143 App. Div. 683; *Markowitz* v. *Mayer,* 232 App. Div. 68; *Ga Nun* v. *Palmer,* 202 N. Y. 483; *Wood* v. *Fisk,* 156 App. Div. 497; 215 N. Y. 233.)

HUBBS, J. Respondent, on August 21, 1929, was in the employ of the appellant Chatham Phenix National Bank and Trust Company at a salary of $18,000 per annum. On that date he entered into a written contract with the bank for the purchase of fifty shares of the bank

stock, pursuant to an employees' purchase plan. That plan was set forth in a notice signed by a vice-president of the bank, which stated, in substance, that the president and a director of the bank had offered to officers and employees 2,000 shares, with rights to subscribe to new stock attached, at $772 per share; that the management committee had arranged a loan to carry the stock and another to take up the rights, and to offer the new stock instead of the old, so that there would be 12,000 shares at $144; that on October first the bank would start paying dividends on the new stock at four dollars; that the offer was open only to officers and employees; that payments were to be made one dollar and fifty cents per share each pay day (three dollars per month) for four years, the amount to be deducted by the payroll department; that the stock could not be sold prior to September 1, 1933, though previously paid for; that no stock would be delivered prior to that date except by special permission of the management committee; that the interest would be charged at cost; dividends would be credited to the purchaser; that

" 8. In the event of resignation or discharge of the subscriber the management committee shall have the right to refund all payments made with interest at 6% and may sell the stock of the party in question as its discretion may dictate.

" 9. In the event of death, the estate of the subscribing decedent may complete the payments due and sell the stock forthwith. * * * The estate has the option to ask the management committee to refund payments made, plus 6%, if the estate is unable to complete the payments; the stock to be returned to the committee."

Respondent's agreement referred to the notice or plan in question, and provided specifically as follows: " It is understood that in the event my employment with the bank is terminated either voluntarily or involuntarily before September 1, 1933, you may refund to me the

payments I have made in full, plus 6% interest, whereupon my right and interest in and to the stock subscribed for shall cease." It also provided, referring to the notice or plan: "in any matter or matters arising in connection with this subscription not covered therein I agree to be bound by the decision of your committee."

After two payments, or $150, had been deducted from respondent's salary, he was made vice-president of Empire State, Inc., in which officers and directors of the bank were financially interested, at a salary of $30,000 per annum, but did not resign as vice-president of the bank, being re-elected from year to year at a salary of one dollar per annum, until February 9, 1932, when the bank merged with the Manufacturers Trust Company. Upon the merger he was not elected as an officer of the trust company nor was he employed thereby.

In the meantime he continued to pay at the rate of $150 a month on account of his subscription until November 4, 1931, the total amount paid being $3,900. At or about the time of the merger he orally demanded a refund of his payments, with interest, which demand was followed by a written demand dated March 1, 1932. His demand not having been complied with, on or about July 23, 1936, he instituted this action to recover of the bank and of the trust company, as well as three of the former officers of the bank, the amount paid, with interest. He alleged that he entered into the contract relying upon the written instrument of the defendants to the effect that the stock could be paid for in installments out of salary from the bank and that the bank would refund any sums paid by an employee whose connections with the bank should be terminated prior to September 1, 1933.

The answers admitted the written offer and acceptance and denied liability for repayment. The complaint was dismissed on the merits as against defendants Earle and Johnston, and without prejudice as against defendant Kaufman, he not having been served with process and

not having appeared, and findings having been waived, the court rendered judgment in favor of plaintiff and against the defendants bank and trust company. The Appellate Division affirmed, two of the justices dissenting. The trial court based its decision upon a decision of the Appellate Term in *Coyne* v. *Chatham Phenix Nat. Bank & Trust Co.* (155 Misc. Rep. 656), involving the same stock offering. There the trial court found lack of mutuality. That finding was approved on appeal and the appellate court said that the agreement was illegal and unenforcible because the bank, being a national bank, could not enter into an agreement to sell its own stock or buy it back. No such question is presented here as the complaint alleges a valid contract fully performed by plaintiff.

Briefly, the complaint alleges breach of an alleged valid contract wherein the bank agreed to refund all payments made by plaintiff on his stock subscription on the termination of his employment by the bank, and that plaintiff duly performed the agreement on his part. The trial was conducted on the theory set out in the complaint. Concededly the proof did not sustain the allegations of the complaint. The plaintiff did not make monthly payments up till the time of his discharge, February 9, 1932, but defaulted in November, 1931. He did not after such default offer to pay. The bank never refused to accept payments and plaintiff was not ready and willing to complete the payments. Contrary to the allegations of the complaint the evidence discloses a complete breach of the contract by the plaintiff. In the face of such breach he cannot recover on the contract.

In any event, the contract merely reserved an option in the bank to refund or not as it saw fit, in the event that an employee left its employment. The statement that " It is understood that in the event my employment with the bank is terminated   *   *   *   you may refund to me   *   *   *" cannot be construed, as urged by

plaintiff, into a promise by the bank that it bound itself to so refund. It merely reserved the right to choose between letting him continue with the contract, and wiping out his interest by a refund. In this case " may " does not mean " must." The substance of plaintiff's complaint is that the bank bound itself to refund. Therefore, it would make no difference if plaintiff was not in default, as he has misconstrued the meaning of the contract. " The courts will not make a new contract for the parties under the guise of interpreting the writing." (*Heller* v. *Page*, 250 N. Y. 132, 135.)

We do not reach the question of the *ultra vires* character of the contract (U. S. Code, tit. 12, § 83; R. S. § 5201; U. S. Code, tit. 12, § 24; R. S. § 5136; *Awotin* v. *Atlas Exchange Nat. Bank*, 295 U. S. 209), as plaintiff both in the complaint and at the trial relied on the validity of the contract. He cannot now argue its invalidity. One cannot rely on a contract as valid and seek to recover because of its breach, which constitutes an affirmance of the contract, and then have a recovery on the ground that the contract is void, which constitutes a disaffirmance of the same contract. That is what the plaintiff is attempting to do here. (*Merry Realty Co.* v. *Shamokin & Hollis R. E. Co.*, 230 N. Y. 316.)

Plaintiff claims that there was an anticipatory breach of the contract by the defendant when in the fall of 1931 plaintiff heard that there might be a merger and that he might not be continued as an employee. Here again plaintiff is attempting to sustain a recovery on a ground directly contrary to the theory of the complaint and trial. In any event there was no right to rely on an anticipatory breach here as it was still possible that something would occur between November, 1931, the time of plaintiff's default, and February 9, 1932, to prevent the merger, or at least to change the mind of the management as to continuing the plaintiff as an employee. None of the grounds upon which to base an anticipatory breach are

here disclosed. (American Law Institute, Restatement of the Law of Contracts, § 318.)

The judgments should be reversed and the complaint dismissed, with costs in all courts. (See 278 N. Y. 733.)

LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; CRANE, Ch. J., taking no part.

Judgments reversed, etc.