Alex BERGER, Jr. et al., Plaintiffs-
Appellants,

v.

MERCANTILE TRUST COMPANY,
a Corporation et al., Defendants-
Respondents.

No. 48567.

Supreme Court of Missouri,
Division No. 1.

Dec. 11, 1961.

Motion for Rehearing or to Transfer to
Court en Banc Denied Jan. 8, 1962.

J. Marvin Krause, St. Louis, Nouss, Bamburg & Gaebe and Harold B. Bamburg, Clayton, for appellants.

Thompson, Mitchell, Douglas & Neill, James M. Douglas, Robert Neill, William G. Guerri, St. Louis, for respondents.

HOLMAN, Commissioner.

In this class action plaintiffs, as owners of certificates of beneficial interest in a certain trust, sought (in the first count of their petition) to recover all of the stock of Mercantile-Commerce National Bank in St. Louis (hereinafter referred to as "National Bank"). In the second count they alternatively sought to recover damages for breach of trust in the sum of $3,638,323.57 from certain individual trustees of a 1934 trust. A third count of the petition will not be further referred to as, for the pur-

poses of this appeal, we regard it substantially the same as Count I. A trial resulted in a judgment for defendants upon all counts. Plaintiffs have duly appealed.

This is the second case to reach this court involving the rights of owners of certificates of beneficial interest in the trust hereinafter described. The main controversy in the first case related to the amount required to be paid by Mercantile-Commerce Bank & Trust Company, now Mercantile Trust Company (each hereinafter referred to as "Trust Company"), to the trustees as the purchase price of the stock of National Bank upon the exercise of the option to purchase said stock which was contained in the trust agreement dated June 11, 1934. In disposing of the appeal in that case we held that said trust company should have paid the trustees $76,132.67 more than had been paid. Moser v. Keller, Mo.Sup., 303 S.W.2d 135.

The individual plaintiffs in the first case were Byron Moser and Rosa Cerf Berger. They sued for themselves and in behalf of all other persons holding certificates of beneficial interest in the trust estate. The plaintiffs in the present case are Byron Moser and Alex Berger, Jr. (the son of Rosa Cerf Berger). They also sue for themselves and as representatives of the other beneficiaries of the said trust estate.

The factual background which formed the basis of the plaintiffs' claims in each case is stated in the opinion of this court in the first case as follows (303 S.W.2d 136, 137, 139):

"In 1929 two St. Louis banks consolidated. The Mercantile Trust Company and the National Bank of Commerce formed the Mercantile-Commerce Bank and Trust Company. The charter of the National Bank of Commerce was retained to facilitate the transfer of fiduciary duties to the new bank. The capital of the National Bank of Commerce was reduced to $350,000; consisting of 3,500 shares of $100 par value stock and a surplus of $75,000. The Mer-

cantile-Commerce Bank and Trust Company owned all of that stock. In August 1930, the Mercantile-Commerce Bank and Trust Company opened a subsidiary bank in midtown St. Louis under the retained charter of the National Bank of Commerce and changed the name of the new bank to the Mercantile-Commerce National Bank in St. Louis (hereinafter referred to as 'National Bank').

"In 1933 the board of governors of the Federal Reserve System directed Mercantile-Commerce Bank and Trust Company (that bank and its successor, Mercantile Trust Company, will be hereinafter referred to as 'Trust Company') to divest itself of the ownership of the shares of stock of National Bank. As a result, and contrary to the contention of Trust Company as to the legality of its ownership of the stock of, and the operation of, National Bank, Trust Company complied with that order to the extent herein described. On June 11, 1934, Trust Company entered into a trust agreement whereby it transferred title to the 3,500 shares of National Bank's stock to five trustees. Those five trustees were directors of the Trust Company. They continued as such trustees until the termination of the trust. They are named in the caption hereof, although, since this appeal, two of them died and their respective executors were substituted.

"Pursuant to the terms of the trust, the trustees issued to Trust Company 100,000 certificates of shares of beneficial interest in the trust estate. Trust Company in turn declared a dividend in kind on its 100,000 outstanding shares of stock whereby each of its shareholders received one such certificate for each share of stock. The trust instrument provided that the owners of certificates would, upon distribution of the trust estate, be entitled to one one-hundred-thousandth of the corpus for each certificate he held. The certificates as issued referred to the fact that the trust agreement was on file with Trust Company as agent for the trustees and to the fact that the trust agreement was made a part of the certificate. The certificates were negotiable and were traded in over-the-counter transactions so that at the trust's termination they were held by 2,205 persons residing in a widespread geographical area.

"By Article V of the trust agreement, the trustees gave Trust Company an irrevocable option to purchase from trustees all or any part of the stock of National Bank at any time prior to the termination of the trust which, except for such option termination, was to end on June 11, 1954. On June 6, 1951, Trust Company exercised its option and on that same date gave trustees the 30-days' notice thereof as provided for in the trust instrument. Pursuant to that notice, the trustees met on June 6 and entered into a written agreement for the sale of the stock to Trust Company.

"Article V of the trust agreement provided a method for determining the price which Trust Company was to pay for the National Bank stock in the event it exercised its purchase option. That provision with respect to price (which, as will appear, is the basis of the controversy in this case) was: 'The price to be paid by said Trust Company upon the exercise of such option shall be the book value of the shares of stock so purchased as of the date of the exercise of the option. * * *' * * *

"On June 22, 1951, the trustees voted to then distribute to the holders of the certificates for shares of beneficial interest $12 for each such share, to distribute any balance as soon as practicable after July 6, 1951 * * *.

"The trustees and the Trust Company accepted the adjusted book value approved by Price, Waterhouse & Company of $1,767,829.76 as the total price to be paid for the stock. The trustees, after approving expenses incurred in the sum of $6,422.90, voted to distribute the additional cash received, either by a first and final payment of $17.614 to the certificate holders who had not theretofore received the $12 partial distribution, or by a second and final

payment of $5.614 per share to those who had received the $12 partial distribution."

The day after the exercise of the option, Trust Company transferred the National Bank stock to Mercantile-Commerce Company, its wholly owned subsidiary. On June 14, 1951, Trust Company transferred all of the stock of Mercantile-Commerce Company to Hord Hardin et al. as trustees for the stockholders, from time to time, of Trust Company.

The defendants in the instant case are Mercantile Trust Company, Mercantile-Commerce Company, three of the trustees (or the executors of their estates) of the 1934 trust, and the various trustees of the stock of Mercantile-Commerce Company.

The first suit was filed on August 31, 1951, and was terminated with the entry of a final judgment on June 27, 1957, in accordance with our mandate. The present case was filed on June 4, 1956, while the first case was pending on appeal.

Upon this appeal plaintiffs contend that the trial court should have entered a judgment in their favor on the first count because the option contained in the 1934 trust agreement was void and Trust Company was not entitled to enforce it. Their main reasons for contending that the option was void are (1) that it violated the federal laws prohibiting the purchase of corporate stocks by banks (see 12 U.S.C.A. §§ 24, 335); (2) violated § 362.105(1), RSMo 1959, V.A.M.S., which provides that "* * * no bank shall maintain in this state a branch bank * * *"; and (3) because it was contrary to the public policy of the United States and the State of Missouri.

Defendants here contend that the option agreement was valid and that the reasons advanced by plaintiffs in asserting that it was void are all unsound. Primarily, however, defendants rely upon their pleaded affirmative defense that plaintiffs made an irrevocable election of remedies in suing for and recovering the book value of the stock pursuant to the option and therefore cannot maintain this inconsistent action seeking the return of the stock or damages for breach of the trust.

■ We are of the opinion that the defense of election of remedies is applicable in this case and that plaintiffs are therefore precluded from maintaining this action. "Election is simply what the term imports—a choice shown by an overt act between two or more inconsistent rights, either of which may be asserted at the will of the chooser alone. * * * The doctrine is applicable where an aggrieved party has two remedies by which he may enforce inconsistent rights growing out of the same transaction and, being cognizant of his legal rights and of such facts as will enable him to make an intelligent choice, brings his action by one of the methods. Under such circumstances, the law says he shall not thereafter adopt the alternate remedy, for a suitor cannot pursue a remedy which predicates his case upon one theory of right and thereafter seek a remedy inconsistent with such prior proceeding." 18 Am.Jur., Election of Remedies, § 3, pp. 129, 130. "Although mere institution of suit does not constitute a conclusive and irrevocable election of remedies, it has long been settled that, where a party, having the right to pursue one of two inconsistent remedies, makes his election, institutes suit, *and prosecutes it to final judgment*, he cannot thereafter pursue another and inconsistent remedy, irrespective of whether such judgment has been for or against the electing party. ' " 'The basic concept of the doctrine of election is that a party shall not be permitted to insist at different times upon the truth of two inconsistent and repugnant positions, according to the promptings of his own interest, as to first affirm and later disaffirm a contract, or the like.' " ' [Davis v. Hauschild, Mo., 243 S.W.2d 956, 959–960] ; or, as our courts, borrowing from the vernacular of the Scotch, have stated it, a party

may not both approbate and reprobate." King v. Guy, Mo.App., 297 S.W.2d 617, 622.

When Trust Company elected to exercise its option to purchase the stock in question plaintiffs, as beneficiaries of the trust, had at least two remedies. They could have taken the position (as here) that the option was void and could have filed a suit seeking to set aside the sale of the stock. However, they did not do so. They elected to institute an action in which they sought to establish the correct purchase price (book value) which Trust Company should have paid the trustees for the stock upon the exercise of the option and which they alleged was at least $250,463 more than had been paid. Plaintiffs (we use said designation to include all holders of certificates of beneficial interest) pursued that remedy over a period of almost six years until the suit was terminated by a final judgment. They were successful in procuring a judgment in their favor for a substantial sum which was paid by Trust Company and distributed among them in accordance with their interests. The remedy sought and obtained in that action was certainly inconsistent with the remedy asserted in the present case. In the first case they were seeking to recover an additional sum under the terms of the option by asserting a more favorable construction of the term "book value" than had been agreed upon by the trustees and Trust Company. That action necessarily presupposed the validity of the option, and, when pursued to final judgment, irrevocably bound plaintiffs to the position that the trust agreement contained a valid option.

In the following cases the defense of election of remedies has been held applicable in factual situations which are somewhat comparable to the one before us. King v. Guy, supra; Tooker v. Missouri Power & Light Co., 336 Mo. 592, 80 S.W. 2d 691, 101 A.L.R. 365; United States Fidelity & Guar. Co. v. Fidelity Nat. Bank & T. Co., 232 Mo.App. 412, 109 S.W.2d 47;

and Bell v. Butte Inv. Co., Mo.Sup., 250 S.W. 381.

Plaintiffs contend that it was not shown that they had sufficient prior knowledge of the existence of the remedy asserted in the present case to warrant application of the defense of election of remedies. In that connection it should be noted that it need not be shown that they had that knowledge at the time the first suit was filed. It is usually considered sufficient if it is shown that plaintiffs had that knowledge at any time before final submission of the cause. This for the reason that upon discovery of facts indicating a second inconsistent remedy plaintiffs (prior to final submission) could have dismissed the first case, without prejudice, and could then have filed a suit seeking to enforce the newly discovered remedy. Upon the issue of knowledge the trial court found that "Plaintiffs herein, as individuals and as representatives of a class consisting of all the holders of certificates of beneficial interest under the trust agreement of June 11, 1934, had full knowledge of all facts upon which this action is based prior to submitting cause No. 49,010–D [the first case] to this court for decision." We will not detail the evidence supporting that finding. We consider it sufficient to say that there was ample evidence to support it and we adopt that finding for the purposes of this opinion.

Also, it should be observed that in several instances in the first trial plaintiffs offered evidence tending to indicate that the option might be illegal and the trial court, on three occasions, called their attention to the fact that they had elected to stand on the validity of the option. Note the following statements by the court and plaintiffs' counsel: "(1) The Court: It appears to me, counselor, that your theory of recovery is not on the proposition that the trust agreement is illegal or void, but you asked the court to declare the true meaning of book value as used in the trust agreement. Mr. Rimmel: That

is true, your honor. * * * (2) The Court: I might state at this time that I am inclined to believe it is inadmissible, for the reason that your whole theory of recovery is under the trust agreement and the option, and you have been stressing the option, and particularly that part of the option which sets out how the price of the certificates of beneficial interest shall be determined; and I thought that your whole case was based primarily on the proposition that * * * the trustees did not obtain a sufficient amount or sufficient consideration for the stock, and it seems to me if the transaction was legal but not carried out, that is your position, or else if the whole thing is illegal, why, don't you have to take a stand one way or another? * * * (3) The Court: It doesn't ·appear to me you can have your cake and eat it, too. You can't have the contract and recover on the contract, and then declare it is illegal. Mr. Willer: We are not attempting to declare that in this particular matter by this letter. The Court: Are you contending that the trustees should have looked into the illegality and determined it if it was illegal? Mr. Rimmel: No, we are contending the trustees should have looked into the matter, period. The Court: For what purpose? Mr. Rimmel: To see whether or not they were getting the correct price."

█ But plaintiffs say that the "proof only went to what Moser and possibly Berger and his mother knew when the prior action was commenced. They offered no evidence to show that any other members of the class of persons they now seek to bar from recovery knew anything about the validity of the option, and we have found no authority holding that the personal knowledge of persons who bring a class action is imputable to the other members of the class." We think there is no merit in the suggestion that the members of the class are not bound by the knowledge of the individual plaintiffs in the two actions. In the first case we held that the action was properly a class ac-

tion and that the plaintiffs therein could properly bring a class action on behalf of all of the owners of certificates of beneficial interest. Upon the authority of the first case, and upon consideration of the evidence before us, we hold that the present suit is a proper class action and that plaintiffs fairly and adequately represent all members of the class here involved. In that situation it is virtually elementary that "a judgment in favor of the parties representing the general class is operative under the doctrine of res judicata in favor of all who are thus represented, and a judgment against those parties is operative also against those represented * * *." 39 Am.Jur., Parties, § 44, p. 919. If plaintiffs are the representatives of all members of the class in conducting the proceedings, and if all such members are to be bound by the judgment, we think it follows that the knowledge which the individual plaintiffs had, at the time they made an election as to the remedy they would pursue, is imputed to the other members of the class. Any other conclusion would be illogical, unsound, and would, as a practical matter, result in the emasculation of the doctrine of class representation in cases of this nature.

█ Plaintiffs also contend that the defense of election of remedies is not applicable to this case, because, in cases involving a breach of trust, they say the beneficiary may pursue as many remedies as may be required in order for him to be "made whole" or "obtain entire relief." The difficulty with that contention is that, in a legal sense, plaintiffs obtained entire relief in the first case. In that suit they sought to recover the "book value" of the stock according to their theory of the meaning of that term. The final judgment adjudicated the amount of the "book value" and that amount was paid and has been received by plaintiffs. Just because plaintiffs may have been disappointed in the amount of their judgment in that case does not give them the right to now pursue another inconsistent remedy under the guise

that they have not been afforded full relief. In support of the instant contention plaintiffs have cited Mann v. Bank of Greenfield, 323 Mo. 1000, 20 S.W.2d 502. That case is clearly distinguishable from the case at bar. Therein, the trustee had misappropriated assets of the trust and upon final settlement the substitute trustee filed exceptions and obtained a judgment against the original trustee in the sum of $23,000. He then filed an action seeking to collect the judgment from the trustee's bondsmen but apparently was unable to do so. The suit in the reported case was thereafter instituted in an effort to recover from the defendant bank on the theory that the actual trust assets had come into its possession. We held that the suit against the bondsmen was not an election which would bar the maintenance of the subsequent suit because the remedies were not inconsistent. Each of the suits constituted an effort to collect the original judgment and while the plaintiff was entitled to only one satisfaction he could use more than one remedy in seeking to obtain it. In the instant case the plaintiffs had collected the full amount of their judgment.

It is the further contention of plaintiffs that the defense of election of remedies is not applicable because the option provision was void and hence could not be ratified. They cite 17 C.J.S. Contracts § 279(a), (c), pp. 668, 669, which states that "A contract malum in se or against public policy cannot be made valid by ratification." And that "an agreement void as against public policy or because prohibited by law cannot be rendered valid by invoking the doctrine of estoppel." Somewhat similar principles are stated in the cited case of Parke, Davis & Co. v. Mullet, 245 Mo. 168, 149 S.W. 461. We do not think those principles are applicable to the case before us which, of course, does not directly involve ratification or estoppel but deals with the principles of election of remedies. For a discussion of the distinctions between the doctrines of ratification and estoppel as compared with

election of remedies, see 28 C.J.S. Election of Remedies § 1(b), pp. 1059, 1060, and 18 Am.Jur., Election of Remedies, § 5, p. 131.

We approve the rulings in the following cases decided by the courts of New York and New Jersey where the defense of election of remedies was held to be decisive even though the contract involved was alleged to be void. In Brown v. Manufacturers Trust Co., 278 N.Y. 317, 16 N.E.2d 350, 352, the factual situation required a consideration of principles similar to those here involved. After deciding the issues adversely to plaintiff the court stated: "We do not reach the question of the ultra vires character of the contract (12 U.S.C.A., § 83, R.S. § 5201; 12 U.S.C.A. § 24, R.S. § 5136; Awotin v. Atlas Exchange Nat. Bank of Chicago, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393), as plaintiff both in the complaint and at the trial relied on the validity of the contract. He cannot now argue its invalidity. One cannot rely on a contract as valid and seek to recover because of its breach, which constitutes an affirmance of the contract, and then have a recovery on the ground that the contract is void, which constitutes a disaffirmance of the same contract. That is what the plaintiff is attempting to do here. Merry Realty Co. v. Shamokin & Hollis Real Estate Co., 230 N.Y. 316, 130 N.E. 306." In a similar ruling the New Jersey court stated: "Here he asserts it is invalid and contrary to public policy. There he declared his readiness to perform and based his grievance upon the breach of the contract by the defendants. Here he acknowledges that it was he who declined to perform the contract. At law, he sought compensatory damages. Here he requests a rescission of the contract and the recovery of his initial monetary deposit. The distinction between those contentions would seem to be one of a contradictory and incongruous difference. Courts are not halls in which litigants in seeking redress in the same controversy can approbate in one forum and reprobate in another. To prevent such contortions the doctrine of election of remedies evolved." Lizak v.

Rottenbucher, 140 N.J.Eq. 76, 53 A.2d 362, 366. We rule this contention adversely to plaintiffs.

In connection with our consideration of Count I we should perhaps state that plaintiffs do not contend that they are entitled to retain the amount they have received as the book value of the stock and also recover the stock as sought in this action. While they do not make a tender in the petition, they pray that the court order all beneficiaries to tender the amount heretofore received to Trust Company before the distribution of the stock is made.

For the reasons heretofore discussed we rule that plaintiffs are not entitled to recover on Count I of their petition.

Plaintiffs in Count II sought a judgment for damages against the surviving trustees of the 1934 trust for breach of their duties under said trust. Their main contentions in that regard are based upon the alleged invalidity of the option. They say the trustees should have asserted the invalidity of the option. It is suggested that the trustees should have either (1) refused to sell under the option and thus have required Trust Company to have filed a suit to enforce it, or (2) filed a suit alleging the invalidity of the option and seeking directions concerning a sale under its terms. Other complaints are made concerning the manner in which the trustees performed their duties but these need not be separately considered as the resulting damage is said to be the same as the other matters complained of, i. e., loss of the National Bank stock by sale under the option.

We are of the opinion that the defense of election of remedies also precludes a recovery upon the second count of the petition. This because plaintiffs, with knowledge of the facts, having sued and recovered in an action based upon the validity of the option, cannot maintain this action against the trustees upon theories which presuppose that the option was invalid and that the trustees should have asserted such invalidity. The principles we have discussed in our disposition of the first count are equally applicable to the questions presented in regard to Count II. In addition to the authorities heretofore discussed, we think the following comment in Restatement, Second, Trusts, § 218, p. 510, is applicable: "The rule stated in this section is applicable where the trustee has sold trust property which it was his duty to retain. See § 208. In that situation the beneficiary can at his election charge the trustee with the value of the property at the time of the sale or at the time of the decree or require him to account for the proceeds of the sale. If the beneficiary affirms the sale and elects to require the trustee to account for the proceeds of the sale, he cannot thereafter set aside the sale and hold the trustee liable for breach of trust in making the sale." We accordingly rule that the trial court properly entered judgment on Count II for the defendant trustees of the 1934 trust.

As previously indicated, our ruling on the first count disposes of all contentions in regard to the third count.

The conclusion we have reached makes it unnecessary for us to consider other points briefed by the parties.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.