602 P.2d 53

Richard O. SUITTS and Kathryn W. Suitts, husband and wife, Plaintiffs-Appellants,

v.

FIRST SECURITY BANK OF IDAHO, N. A., W. E. McMurtrey and Pauline McMurtrey, husband and wife, Defendants-Respondents.

No. 12501.

Supreme Court of Idaho.

Oct. 9, 1979.

Rehearing Denied Nov. 20, 1979.

---

Francis H. Hicks of Hicks & Kevan, Mountain Home, for plaintiffs-appellants.

Perce E. Hall of Hall & Friedly, Mountain Home, for defendant-respondent First Sec. Bank.

Loren C. Ipsen of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents McMurtrey.

DONALDSON, Chief Justice.

Plaintiffs-appellants, Richard O. Suitts and Kathryn W. Suitts (hereinafter Suitts) commenced this action on January 8, 1975, seeking damages for breach of contract based upon the alleged wrongful refusal of the escrow holder First Security Bank of Idaho, N. A. (hereinafter First Security Bank) and vendors, W. E. McMurtrey and Pauline M. McMurtrey (hereinafter McMurtreys), defendants-respondents herein, to deliver a certain warranty deed held in escrow to them pursuant to a written contract also held in escrow.

This action arises out of a contract entered into by the Suitts and the McMurtreys on or about April 15, 1969, whereby the Suitts agreed to purchase over a period of time certain real property, cattle and farm equipment from the McMurtreys. An escrow agreement was executed by the

Suitts and McMurtreys, in which the Mountain Home branch of the First Security Bank was designated as escrow holder. The land sale contract, the bill of sale, a warranty deed from the McMurtreys to the Suitts, and a quitclaim deed back to the McMurtreys from the Suitts were placed in escrow. The contract provided that these documents placed in escrow would be delivered to the Suitts upon payment of the purchase price.

Prior to the full payment of the purchase price and complete execution of the contract, a series of disputes arose between the Suitts and the McMurtreys. The Suitts brought two separate actions against the McMurtreys which were ultimately consolidated into one action. The Suitts sought reformation of the legal description of the real property contained in the agreement and in addition alleged the McMurtreys were obstructing an easement granted to the Suitts over land reserved by the McMurtreys. The McMurtreys counterclaimed for breach of contract seeking a declaration of default. The trial court entered judgment reforming the property description and ordering the McMurtreys to remove a portion of a tree obstructing the easement in question. In addition, the court ruled that the Suitts were not in material breach of the contract and dismissed with prejudice the McMurtreys' counterclaim.

In response to this decision, the McMurtreys filed and perfected an appeal to the Idaho Supreme Court. While this appeal was pending, on January 2, 1975, the Suitts tendered to the First Security Bank, as escrow holder, $20,917.81, the remaining balance of the purchase price plus interest. The bank accepted the entire contract balance and tendered the same to the McMurtreys who refused to accept the payment. There is a factual dispute as to whether the bank then tendered the payment back to the Suitts, who refused to accept the payment. The bank then tendered notice to both parties that it was holding the escrow at status quo until the rights, powers and

duties of the parties became finally determined by judicial action.

The Suitts then commenced this present action against the bank and the McMurtreys for the sum of $250,000 in damages for alleged wrongful failure to deliver the escrow documents. On February 18, 1976, the Idaho Supreme Court handed down its decision, which affirmed the reformation of the contract made by the trial court and also affirmed the refusal of the trial court to declare a forfeiture of the contract. However the Idaho Supreme Court reversed the part of the trial court's decision ordering the McMurtreys to remove the alleged obstruction of the easement across their land. *Suitts v. McMurtrey*, 97 Idaho 416, 546 P.2d 62 (1976).

After the Idaho Supreme Court decision, the bank received authorization from the McMurtreys to release the escrow documents to the Suitts on March 4, 1976. The bank delivered the escrow instruments to the Suitts and the payment was delivered to the McMurtreys to close the escrow.

This present appeal is from district court orders granting summary judgment in favor of both the First Security Bank and the McMurtreys and dismissing the Suitts' action for breach of contract based on wrongful refusal to deliver the escrowed documents.

I

The trial court granted summary judgment in favor of the McMurtreys dismissing Suitts' claim for relief against them holding that "there was no breach of duty owed by the McMurtreys to Suitts for instructing the escrow holder not to deliver the deed and other escrow documents pending the decision on appeal." The trial court held the McMurtreys had a right to stay the operation of the escrow contract pending a final determination on appeal. The trial court came to this conclusion based on its determination that under the terms of I.C. § 13–208 and I.C. § 13–211 all proceedings or actions which would affect the status quo during the pendency of an appeal are

stayed.[1] The trial court stated that the continuation of the escrow contract would have ultimately led to the vesting of title in the Suitts during the appeal, thus changing the status quo and making the McMurtreys' appeal meaningless. The trial court concluded that since the purpose of the above statutes was to preserve the status quo during an appeal, the taking of an appeal in the instant case stayed the operation of the escrow contract.

■ We disagree with the trial court's analysis of the effect of the McMurtreys' appeal on the operation of the escrow contract. Idaho Code § 13–211 provided:

"In cases not provided for in sections 13–204 [money judgment], 13–205 [judgment in replevin], 13–206 [judgment in specific performance] and 13–207 [judgment in ejectment], the perfecting of an appeal by giving the undertaking, or making the deposit mentioned in section 13–203, stays proceedings in the court below upon the judgment or the order appealed from . . . ."

It is clear that under I.C. § 13–211 the mere perfecting of an appeal by the McMurtreys stayed further proceedings in the district court pertaining to the action which was the subject of the appeal. Idaho Code § 13–211 in effect provides an automatic stay or supersedeas upon the perfecting of an appeal, thus divesting the trial court of "jurisdiction to act in any manner (with relation to the rights and liabilities of an appellant) except in aid of and not inconsistent with the appeal." *Coeur d'Alene Turf Club, Inc. v. Cogswell*, 93 Idaho 324, 329, 461 P.2d 107, 112 (1969); *Anderson v. Pickrell*, 115 Ariz. 589, 566 P.2d 1335 (1977). While it is clear that the actions of the trial court below are stayed by the taking of an appeal, it is not evident that the operation of an escrow contract itself is stayed.

"[I]t has sometimes been said that self-executing judgments are not affected by a supersedeas or a stay of proceedings, on the theory that supersedeas operates only

to prevent action by the trial court and not to suspend the effect of the judgment, and as a self-executing judgment requires no process for its enforcement, there is nothing upon which a supersedeas could operate." 4 Am.Jur.2d Appeal and Error § 368, p. 842.

The California Supreme Court in *Caminetti v. Guaranty Union Life Insurance Co.*, 22 Cal.2d 759, 141 P.2d 423, 425 (1943), in dealing with a statute which closely resembled I.C. § 13–211, stated:

"The order appealed from is self-executing in that it requires no process of the court to carry it into effect. The appeal does not stay the effectiveness of such a judgment. The writ of supersedeas acts only upon proceedings to enforce the judgment in the court below—not on the judgment itself. Sec. 949, Code Civ. Proc.; *Dulin v. Pacific W. & C. Co.*, 98 Cal. 304, 33 P. 123; *In re Imperial Water Co. No. 3*, 199 Cal. 556, 250 P. 394. In the *Dulin* case it was pointed out that the writ of supersedeas 'cannot be used to perform the functions of an injunction against the parties to the action, restraining them from any act in the assertion of their rights, other than to prevent them from using the process of the court below to enforce the judgment * * *.' "

We agree with the approach of the California court and find it particularly applicable to the fact situation in the instant case. The judgment of the lower court finding no default by the Suitts on the land sale contract for the property required no further process by the lower court for its enforcement and had intrinsic effect. A self-executing judgment, like this one, leaves no proceedings to be stayed by operation of I.C. § 13–211. "[A] judgment, order, or decree which does not command or permit any act to be done, or is not of a nature to be actively enforced by execution or otherwise, but is self-executing, is not within the statute, as there is nothing upon which a stay bond can operate in such a case." *Hig-*

---

1. I.C. §§ 13–208, 211 were in effect at the time of the above controversy and appeal. They were repealed in 1977 and the area of stay of proceedings upon appeal is now covered in I.A.R. 13.

*gins v. Fuller*, 48 N.M. 215, 148 P.2d 573, 574 (1943). The operation of the escrow contract was not stayed by the appeal perfected by the McMurtreys since the judgment of the trial court was self-executing. Upon completion of the terms of the escrow contract the Suitts had a right to the escrowed documents, notwithstanding the appeal.

■ McMurtreys complain that a successful prosecution of their appeal in the original action would have been a meaningless act if during the pendency of the appeal the Suitts could have compelled First Security Bank to deliver the escrowed documents to them. Therefore, the McMurtreys argue, it was imperative to stay the operation of the escrow to preserve the property in status quo. McMurtreys contend that if the escrowed documents were delivered to the Suitts, they in turn could have transferred the property to a bona fide purchaser from whom the property would be irretrievable— even if the McMurtreys were successful on appeal. We do not agree that a stay under I.C. § 13–211 was the only safeguard available to the McMurtreys to protect their interest in the property pending appeal.

Since the Suitts were in possession of the property and the McMurtreys' main concern was the transfer of the property to a bona fide purchaser, the appropriate method the McMurtreys should have followed to protect their interest in the property was the filing of a lis pendens on the property. Idaho Code § 5–505 states in relevant part:

> "the defendant at the time of filing his answer, when affirmative relief is claimed in such answer, or at any time afterward, may file for record with the recorder of the county in which the property or some part thereof is situated, a notice of the pendency of the action, containing the names of the parties, the object of the action or defense, and a description of the property in that county affected thereby. From the time of filing such notice for record only shall a purchaser or incumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the

action, and only of its pendency against parties designated by their real names."

Under the statute existing at the time of the initial controversy and appeal, an action is deemed pending from the time of its commencement until its final determination on appeal. I.C. § 12–606 (repealed March 31, 1975). It seems clear that under the statutory law existing at the time of the original action the lis pendens would continue to have effect until the final determination of the action on appeal. *See Petty v. Hall*, 257 Ala. 145, 57 So.2d 620 (1952); *Maedel v. Wies*, 15 N.W.2d 692 (Mich.1944); 54 C.J.S. Lis Pendens § 36. The effect of filing a lis pendens is that a person who purchases or acquires rights in the subject matter of the litigation during the pendency of the action (which encompasses appeal) takes subject to the final disposition of the case. *Petty v. Hall, supra*; 54 C.J.S. Lis Pendens § 36; *cf. Radermacher v. Daniels*, 64 Idaho 376, 133 P.2d 713 (1943) (actual notice). We conclude that the trial court erroneously granted summary judgment to the McMurtreys on the ground that the operation of the escrow was stayed pursuant to I.C. §§ 13–208 and 13–211 during the pendency of the appeal. The McMurtreys, absent a statutory stay, could have protected themselves against transfer of the property in question to a bona fide purchaser during the pendency of the appeal by filing a lis pendens.

## II

The trial court granted summary judgment in favor of First Security Bank dismissing the Suitts' action on the ground that the escrow contract allowed the bank to withhold delivery of the escrowed documents without liability until its duties were finally determined by judicial action. The relevant provision of the escrow contract reads as follows:

> "You may at your option at any time without liability to anyone, withhold delivery of all said documents and property and decline to receive further payments hereunder until your rights, powers, and duties hereunder in any respect requested by you have been settled acceptably to

yourselves by further written instructions of the undersigned or finally determined by judicial action."

■ The duties of an escrow holder are those set out in the escrow agreement. *Foreman v. Todd,* 83 Idaho 482, 364 P.2d 365 (1961). Contract clauses which attempt to limit liability are construed strictly against the person relying on them, especially when that person is the preparer of the document. *Anderson & Nafziger v. G. P. Newcomb,* 100 Idaho 175, 595 P.2d 709, (1979). The trial court correctly determined that under the above contractual term the escrow holder has the right in appropriate circumstances to withhold delivery of the escrowed documents. However, we disagree with the court's determination that the events which transpired in this case constituted "appropriate circumstances" for withholding the documents.

First, it appears from the language of the provision that if the escrow holder elects to withhold delivery of the documents to the buyer, it must also decline to receive further payments from the buyer. The record shows that on January 2, 1975 First Security Bank in fact received Suitts' tender of the remaining balance of the purchase price plus interest. This amount was then tendered by the bank to the McMurtreys, who refused to accept it. There are conflicting affidavits as to whether the bank then tendered the money back to the Suitts, who also refused, or whether the bank immediately notified both Suitts and McMurtreys that it was holding the money in a suspense account. This conflict could bear on the issue of damages, and should be resolved on remand. However, in either event, the bank's refusal to deliver the escrowed documents, once it received the full balance from the Suitts, was improper under the terms of the escrow agreement and the facts of this case. It would be one-sided in the extreme to construe the escrow agreement as allowing the neutral escrow holder to accept full payment from the purchaser while at the same time refusing to deliver the documents for which payment was made. Therefore, it was error for the trial court to grant the escrow holder's motion for summary judgment.

■ First Security Bank, as escrow holder, violated the escrow provision in another respect. The clause envisions that when an escrow holder is faced with conflicting demands by the seller and buyer, it may withhold delivery of the escrowed documents and decline further payments, without liability, *while it requests clarification of its rights, powers and duties.* The escrow holder's request for clarification of its duties may be satisfied (1) by agreement between the buyer and seller or (2) by final judicial determination.

We are not persuaded that First Security may invoke the protection of the above exculpatory clause by its actions in merely placing its escrow account in suspense while awaiting the outcome of the appeal in the original case. As stated above, exculpatory clauses are construed strictly against the person relying on them, especially when that party is the preparer of the clause. *Anderson & Nafziger v. G. T. Newcomb, supra.* To avail itself of the exculpatory protection afforded by the clause in question, it was incumbent upon First Security to take affirmative steps to seek clarification of its duties under the escrow agreement. Stripped to its relevant essentials, the clause provides that the escrow holder may withhold delivery of the documents and refuse to accept further payments until its rights, powers and duties under the escrow agreement, in any respect requested by it, have been either (1) settled acceptably to it by written instructions from the parties to the sale contract, or (2) finally determined by judicial action. The escrow term providing for clarification by the second means clearly contemplates an action brought by the escrow holder for a judicial determination of its rights, powers and duties *under the escrow agreement.* The responsibility of the escrow holder to seek clarification of its duties under the terms of the escrow was not satisfied by merely holding the escrow in limbo while it awaited the outcome of an appeal in an action

brought by the parties to determine *their* rights and duties under the *sale* contract. The initial issue faced by First Security Bank was the determination of its own duties during the pendency of the appeal when faced with a demand by the buyers (Suitts) for the escrowed documents after they had performed all the conditions of the purchase contract. Instead of seeking judicial clarification of the effect of the appeal on the operation of the contract, First Security Bank placed the escrow contract in suspense and awaited a final judicial determination on appeal of the ultimate issue of whether there had been a default under the sale contract. As we previously held in this opinion, the appeal of the original action did not stay the operation of the escrow contract. Therefore, the Suitts had a right to the escrowed documents upon fulfillment of the terms of the purchase agreement, notwithstanding the pendency of the appeal concerning whether there had been a default. The approach adopted by First Security Bank was not in accordance with the contract provision to deliver the escrowed documents upon fulfillment of the Suitts' duty to pay the purchase price.

We are convinced that the proper course of action for First Security Bank, as escrow holder, to have followed and one which would have invoked the protection of the clause in question, was to have brought an interpleader action pursuant to I.R.C.P. 22. "[S]ince the purpose of interpleader is to protect against multiple litigation, interpleader is a proper remedy whenever, as in this case, a stakeholder stands in reasonable apprehension of diverse claims against his fund." *First Security Bank of Idaho, Nat. Assn. v. Rogers*, 91 Idaho 654, 656, 429 P.2d 386, 388 (1967). In *First Security Bank of Idaho, Nat. Assn. v. Rogers, supra*, which involved an interpleader action brought by the bank as escrow holder to adjudicate conflicting claims against the fund in question, this Court indicated that a clause identical to the one in controversy in the instant case authorized if not contemplated the bringing of an interpleader action by the escrow holder to settle diverse claims against the fund it holds. We are persuaded that the bringing of an interpleader or similar affirmative action by the escrow holder was necessary to invoke the protection of the exculpatory clause in question. The scant record before us at this stage indicates there were not sufficient affirmative steps taken by the bank as escrow holder to actuate the clause. Summary judgment therefore should not have been granted.

Judgment reversed.

SHEPARD and BISTLINE, JJ., and DUNLAP, J., Pro Tem., concur.

BAKES, Justice, concurring in part and dissenting in part:

I agree that the trial court erred in granting defendants McMurtreys' motion for summary judgment on the issue of the McMurtreys' liability to plaintiffs Suitts for the McMurtreys' failure to accept the Suittses' tender of the contract balance and interest while the McMurtreys' appeal was pending. However, I do not believe that the sellers McMurtreys' liability for damages for their alleged breach of the contract depends upon whether the district court judgment in the previous action between the parties was self executing or not, as the majority concludes.

The operation of the escrow contract was not stayed by the sellers McMurtreys' appeal, whether the district court judgment was self executing or not. Because, as the appeal subsequently established, the Suittses were not in default under this contract, the buyers Suittses had a right to the escrowed documents upon their tender of the contract balance plus interest as a result of the contractual obligations imposed upon the McMurtreys by the escrow documents. The taking of the appeal did not relieve the sellers of their contract obligation to deliver the escrow documents upon payment of the purchase price, and their refusal to deliver the documents because of the pending appeal was a gamble which they took at their own peril. As the decision on appeal subsequently established, they were wrong, and they should be liable to the buyers for any

damage that their breach of the contract has caused.

However, I dissent from Part II of the majority opinion which reverses the district court's summary judgment granted in favor of the defendant First Security Bank of Idaho.

The majority, in asserting that there are triable issues of fact concerning the exculpatory clause of the escrow agreement, states that the defendant bank's failure to take certain affirmative actions upon being served with conflicting demands by the buyers and sellers, precludes the bank from asserting its right under the escrow agreement to suspend performance of its duties under the contract without liability to the parties. In my opinion the exculpatory clause authorized the defendant bank to suspend its performance of the escrow agreement while it awaited resolution of the pending litigation between the buyers and the sellers.

Conflicting demands had been made upon the escrowholder by the buyers Suittses and the sellers McMurtreys which entitled the escrowholder, in its discretion, to choose to refuse delivery of the escrow documents and to decline to receive further payments on the contract, without liability, until the conflict was resolved, either by agreement of the parties or through litigation. The provision of the escrow contract which gave the bank that right, and which ironically the majority of the Court has interpreted as requiring the bank to bring an interpleader action, reads as follows:

> "You may at your option at any time without liability to anyone, withhold delivery of all said documents and property and decline to receive further payments hereunder until your rights, powers, and duties hereunder in any respect requested by you have been settled acceptably to yourselves by further written instructions of the undersigned or finally determined by judicial action."

The majority concludes that the clause in question required the bank both to return to the buyers their tender of the outstanding contract price upon the sellers' refusal to accept it [1] and to immediately bring an interpleader action or similar affirmative action. Under the majority's analysis the bank's failure to do either of these steps precluded it from protection from liability for non-performance of the escrow agreement.

Even the most casual reading of the foregoing exculpatory clause demonstrates that the majority has read into it something which is not there. The use of the word "may" has always been construed as discretionary. *Leghorn v. Wieland*, 289 So.2d 745 (Fla.Dist.Ct.App.1974); *Brown v. Manufacturers Trust*, 278 N.Y. 317, 16 N.E.2d 350 (1938); cf. *Kerner v. Johnson*, 99 Idaho 433, 583 P.2d 360 (1978) (statutory provision). And if that were not sufficient, the word "may" is followed with the phrase "at your option" which again emphasizes that the escrowholder has discretion in deciding to withhold delivery of the escrow documents until "your rights, powers and duties hereunder in any respect requested by you have been" (1) "settled acceptably to yourselves by further written instructions of the undersigned" or (2) "finally determined by judicial action." I believe the escrowholder, under this contract provision, had the right, without taking any other action, to hold the transaction in *status quo* once it determined that the parties were in disagreement over their rights and obligations under the contract, particularly where the parties had already commenced two judicial actions to resolve that conflict. The majority's holding in effect nullifies the first option in the paragraph because escrowholders will not now be able to maintain the existing status of the escrow arrangement and await a possible voluntary settlement of the parties' differences for fear that one of the parties will accuse them of not having taken the necessary "affirmative steps" which the majority has now read into the contract

---

1. There is a dispute in the summary judgment record on the factual issue of whether or not the bank attempted to return the final payment to the plaintiffs Suittses. The bank claims that it did. The Suittses deny that claim. That issue must be resolved at trial.

provision. Escrowholders under the majority opinion will be forced to immediately return any unaccepted installment payments and then immediately file an interpleader action in order to avoid the liability which the majority opinion imposes. It will virtually eliminate the commendable practice of parties attempting to reach equitable solutions on their own. To require an escrowholder to initiate an interpleader action every time the parties to an escrow agreement indicate that they are having a disagreement, particularly when a judicial determination of the underlying conflict between the buyers and the sellers is already pending in the courts, will promote the very multiplicity of litigation and possibility of conflicting judgments in different courts which the interpleader action is designed to avoid. *See, e. g.*, 7 Wright & Miller, Federal Practice & Procedure, § 1702 (1972).

The judicial and economic waste which will be promoted by adherence to the rule announced by the majority in Part II of its opinion today becomes plain when the facts of this case are examined. Here, a series of disputes arose between the buyers Suittses and the sellers McMurtreys over the legal description of the property they had agreed to purchase and over the extent of an easement the buyers may have acquired across land retained by the sellers. *See Suitts v. McMurtrey*, 97 Idaho 46, 546 P.2d 62 (1976). Further, the sellers alleged that the buyers were in default. Two separate actions were commenced by the Suittses against the McMurtreys as a result of these disagreements. The McMurtreys filed counterclaims against the Suittses seeking a declaration of default. These two actions were consolidated, tried before the district court, and then appealed. Pending the appeal, the escrowholder First Security Bank of Idaho, when tendered what the buyers alleged was the balance due under the contract while faced with a demand for return of the documents by the sellers, determined that it would hold the escrow in *status quo* until the appeal finally determined the respective rights and duties of the buyers and sellers under the escrow agreement. The majority holds that the escrowholder, by both refusing to retender the payment which the sellers refused, and by failing to initiate another action to litigate the very same issues which were the basis of the actions then pending between the buyers and sellers, is not protected by the escrow exculpatory clause which allows the escrowholder to suspend performance pending resolution of any disputes over the rights and duties of the parties to the agreement. The exculpatory clause in the escrow agreement should not be interpreted, or perhaps more accurately, revised by this Court to require the initiation of a third action involving the same parties and raising the same issues as in the two pending actions merely to trigger the exculpatory language in the escrow agreement.

The expense of such an interpleader action would by law have to be borne by the buyers and sellers, who are already burdened by the costs of the two actions previously commenced. The escrow agreement provides that:

> "The undersigned agree to pay to you [the escrowholder] as compensation for your services. hereunder an initial fee . . ., an annual fee . . ., and an additional fee of one tenth of one percent . . . of all funds received by you hereunder, together with all actual and necessary expenses and liabilities you may incur hereunder, for all of which you are granted a first lien on all of the above described property and documents and all funds coming into your hand hereunder . . . ." (Emphasis added.)

I.C. § 5–321 governs statutory interpleader actions and provides in part:

> "[T]he court may, in its discretion, award such [interpleader] party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court."

The possibly conflicting judgments that the multiple actions might reach may well incur even more legal action and expense, also to be borne by the buyers and sellers.

It is apparent that if the bank had filed an interpleader action as the majority now

says that it had an affirmative duty to do, the delay in the delivery of the escrowed documents to the plaintiff buyers would have been even more extended than it was. I.C. § 5–321 provides that upon the filing of the interpleader action[2] the party filing the action "shall deliver the property . . . to the clerk of the court or to such custodian as the court may direct" and the interpleading party is then discharged. Thereafter the buyer and the seller would continue the litigation in that interpleader action to judgment, which judgment could then itself be appealed. It is difficult to understand how starting all over again in a separate interpleader action would result in a more expedited disposition of the dispute between the buyer and the seller than the original two actions which had already been concluded at the trial level and were then pending on appeal. The mere filing of the interpleader action would not have resolved the dispute between the buyer and the seller. It would merely have resulted in the documents being transferred from the possession of the defendant bank to the clerk of the court as required by I.C. § 5–321. The Suittses would still not have received their documents until the interpleader action was concluded. Thus, the procedure which the majority of this Court says the escrow agreement "mandates" would avail the parties nothing, at a tremendous economic cost to everyone.

In my opinion, the escrow agreement exculpatory clause precludes liability of the defendant First Security Bank of Idaho in this case where the buyers and the sellers

had, at the time the bank suspended its performance of the escrow contract, already sought a judicial determination of their rights and duties under the escrow agreement. A resolution of the disputes between the buyers and sellers in that case would have resolved the problem. To require the defendant bank to initiate an independent interpleader action merely to assure that the exculpatory language in the escrow contract is operative is to require the parties to the escrow agreement to incur needless legal expense and to promote an unnecessary waste of judicial resources. I would affirm the summary judgment granted in favor of the defendant First Security Bank of Idaho.

---

2. The majority opinion assumes that the bank had an absolute right to file an interpleader action. However, I.C. § 5–321 specifically provides that an interpleader action may only be filed in the discretion of the court in which the action is filed. Unless we are now prepared to interpret the language "in its discretion" in I.C. § 5–321 to mean that the trial court is mandated to permit the filing of such an interpleader action, as we have interpreted the same language in the escrow agreement involved in this case, then it is not at all clear that the bank in this case would have been permitted to file the interpleader action as the majority of the Court interprets the escrow agreement to require. Recognizing that such an interpleader action would have raised the identical issues which

had already been litigated once in the district court and which were then on appeal, and recognizing that it would have resulted in substantial additional costs to the parties, the district court could have concluded, in the exercise of its discretion, that such an interpleader action was unnecessary, and denied the escrowholder's action to interplead the buyer and seller and deposit the escrow documents with the clerk of the court. It is difficult to understand how liability can be imposed upon an escrowholder for failure to file an interpleader action, which under the escrow agreement it clearly had the discretion either to do or not to do, with a court, which under I.C. § 5–321 clearly had the discretion to accept or not to accept.