713 P.2d 1374

**Richard O. SUITTS and Kathryn W. Suitts, husband and wife, Plaintiffs-Appellants,**

v.

**FIRST SECURITY BANK OF IDAHO, N.A., W.E. McMurtrey and Pauline M. McMurtrey, husband and wife, Defendants-Respondents.**

No. 14707.

Supreme Court of Idaho.

Sept. 27, 1985.

As Modified on Denial of Rehearing Dec. 20, 1985.

James A. Bevis of Manweiler, Bevis & Cameron, Boise, for plaintiffs-appellants.

Perce Hall and Jay Friedly argued, of Hall & Friedly, Mountain Home, for defendant-respondent First Sec. Bank of Idaho, N.A.

Loren C. Ipsen of Moffatt, Thomas, Barrett & Blanton, Chartered, Boise, for defendants-respondents McMurtreys.

BISTLINE, Justice.

The present case finds its way to this Court through a long and circuitous route. Historical data as to the parties and much of the facts herein are found in *Suitts v. First Security Bank of Idaho, N.A.*, 100 Idaho 555, 602 P.2d 53 (1979) (*Suitts I*), and need not be repeated here.

In *Suitts I*, in reversing a summary judgment granted in favor of defendants McMurtreys, the Court stated the following:

> We conclude that the trial court erroneously granted summary judgment to the McMurtreys on the ground that the operation of the escrow was stayed pursuant to I.C. §§ 13–208 and 13–211 during the pendency of the appeal. The McMurtreys, absent a statutory stay, could have protected themselves against transfer of the property in question to a bona fide purchaser during the pendency of the appeal by filing a lis pendens. *Suitts I, supra,* at 559, 602 P.2d at 57.

As to the defendant Bank, in reversing summary judgment, the Court stated the following:

> We are persuaded that the bringing of an interpleader or similar affirmative action by the escrow holder was necessary to invoke the protection of the exculpatory clause in question. The scant record before us at this stage indicates there were not sufficient affirmative steps taken by the bank as escrow holder to actuate the clause. Summary judgment therefore should not have been granted. *Suitts I, supra,* at 561, 602 P.2d at 59.

Following remand to the district court, Judge Walters framed the issues to be litigated as follows:

> [*Suitts v. First Security Bank, supra*] reversed the trial court's prior award of summary judgment to the defendants on the issue of liability. The case is now pending for trial upon the issue of the nature and amount of damages allegedly

suffered by the plaintiffs as a result of the failure of the defendants McMurtreys to file a *lis pendens* to protect their interest in the subject property, and the failure of the Bank to file an interpleader action or take some other similar affirmative course of action for its own protection, while the matter was in litigation on appeal. See *Suitts v. First Security Bank, supra.* Memorandum Decision, Judge Walters, September 4, 1980, pp. 1–2.

In that Memorandum Decision also granted was the defendants' motion for partial summary judgment as to the Suitts' claim for loss of profits and emotional distress, and denied was the Suitts' motion to amend their complaint to include a new cause of action sounding in tort and to allege punitive damages. The Suitts prior to trial dismissed their attorney and continued *pro se.*

Trial of the remaining issues was remanded to the magistrate's division. The reason for this is set forth in Part IV below. The primary issue to be tried was limited to a determination of damages incurred by the Suitts in litigation due to the allegedly wrongful act of respondents in placing the appellants in litigation with others, and causing them to incur expenses for the protection of their interests. *See* Memorandum Decision, p. 3. The jury returned a verdict against the Suitts, finding in favor of both defendants First Security Bank and McMurtreys. In addition, Judge Sellman awarded First Security Bank costs and attorney's fees in the sum of $5,982.43. This appeal followed.

The Suitts have alleged error on appeal with regard to the following issues: (1) the jury instructions given by Judge Sellman; (2) the summary judgment granted by Judge Walters on the issues of lost profits and emotional harm; (3) Judge Walters' denial of leave to the Suitts to file a supplemental complaint; and (4) Judge Sellman's award of costs and attorney's fees to First Security Bank. We consider these issues in turn.

## I.

The Suitts first allege that the partial summary judgment entered by Judge Walters on October 9, 1980, was improper and should be reversed. It is, of course, axiomatic that the appellant is entitled to have the summary judgment reversed if there exists any genuine issue of material fact as to a question upon which the summary judgment was initially awarded. I.R.C.P. 56(c). We consider, then, in turn the issues upon which the district court awarded summary judgment.

## A.

Suitts first complains of the district court's award of summary judgment on the question of lost profits. It is well-established that "[d]amages for loss of earnings or profits must be shown with reasonable certainty and that compensatory awards based upon speculation or conjecture will not be allowed." *Rindlislaker v. Wilson,* 95 Idaho 752, 761, 519 P.2d 421, 430 (1974). In its finding that an award of summary judgment was proper on this issue, the district court stated the following:

Counsel have also briefed and argued the issue of whether the plaintiff can recover damages for 'lost profits' due to the unavailability of the property being purchased, for resale. It would appear appropriate at this time for the Court to dispose of that issue also, pursuant to Rule 56(d) I.R.C.P.

In response to a searching and exhaustive inquiry by the defendant's counsel, the plaintiff Richard O. Suitts was able to testify in his deposition that he did not lose any sales or prospective sales of the subject property from which he could have made a profit during the 14 month delay in releasing the documents from escrow. Neither the contract between the buyer and the seller, nor the affidavits, answers to interrogatories, or answers to pleadings in this matter establish that either the plaintiff or the defendants contemplated at the time the contract was entered into, that the plaintiff expected to realize any profits or

income as a result of the consummation or satisfaction of the contract. Absent such a contemplation, loss of profits are not recoverable. *Traylor v. Henkles [Henkels] and McCoy, Inc.*, 99 Idaho 560, 585 P.2d 970 (1978); *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978). 22 Am.Jur.2d *Damages*, Sec. 174, pg. 246–248.

This is especially so where the alleged loss of profits occur out of collateral or subordinate agreements arising or entered into subsequent to the primary contract in question. 22 Am.Jur.2d *Damages*, Sec. 61–62, pg. 93–97. It further appears that because the plaintiff did not in fact have any firm contracts to resell the property to gain the alleged lost profits about which he now complains (even if such resales had been contemplated by the parties) the absence of such contracts would allow any compensatory award therefor to be made solely upon speculation and conjecture, which is improper. *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974); *Patino v. Grigg and Anderson Farms*, 97 Idaho 251, 542 P.2d 1170 (1975).

The deposition of the plaintiff leaves no genuine issue of material fact in dispute regarding his right to recover damages assessable as lost profits and summary judgment will therefore be granted on that issue. Memorandum Decision, R., pp. 243–44.

■ Based upon our review of Mr. Suitts' deposition,[1] we agree with the district court that the requisite reasonable certainty was not shown and that any conceivable jury verdict would have been based solely upon impermissible conjecture. Accordingly, we affirm the district court's award of summary judgment on the issue of lost profits.

### B.

■ Suitts next alleges error in the district court's award of summary judgment against his claim for damages for mental suffering, anxiety, anguish, or emotional distress. His claim for emotional distress was asserted as part of the general damages flowing from the alleged breach of contract rather than in connection with the independent torts of negligent or intentional infliction of emotional distress.

This issue is controlled by our recent decision in *Brown v. Fritz*, 108 Idaho 357, 699 P.2d 1371 (1985), wherein this Court held that "when damages are sought for breach of a contractual relationship, there can be no recovery for emotional distress suffered by a plaintiff. If the conduct of a defendant has been sufficiently outrageous, we view the proper remedy to be in the realm of punitive damages." *Id.*, at 363, 699 P.2d at 1377. Accordingly, we affirm the district court.

### II.A.

We next focus our examination on the instructions submitted to the jury by Judge Sellman. In the present case, Mr. Suitts, acting *pro se*, objected only to Instruction No. 14—and then only on the basis that it was difficult for the jury to understand. Instruction No. 14 provided as follows:

If it was reasonably foreseeable to the defendants at the time that the Suitts/McMurtrey contract was made that failure to timely deliver the documents from escrow would involve the plaintiffs in litigation with purchasers such as Porter and Clydean Criner, then the plaintiffs are entitled to recover the attorney's fees and costs they incurred in the Criner/Suitts lawsuit. However, if it was not reasonably foreseeable to the defendants at the time the Suitts/McMurtrey contract was made that failure to timely deliver the documents from escrow would involve the plaintiffs in litigation with purchasers such as Mr. and Mrs. Criner, then the plaintiffs are not entitled to recover damages.

The gravamen of appellants' objection to the foregoing instruction was that, as stat-

---

1. *See* Appendix A.

ed, the instruction may cause confusion among the jurors.

■ Judge Sellman, however, overruled appellants' objection, pointing out that Instruction No. 14 was not only a correct statement of the law as written, but that when read in conjunction with Instruction No. 13, it could not realistically be misunderstood. If the court's instructions, considered as a whole, fairly and adequately present the issues and state the applicable law, then no error is committed. *See McBride v. Ford Motor Co.*, 105 Idaho 753, 673 P.2d 55 (1983); *Pacific Northwest Pipeline Corp. v. Waller*, 80 Idaho 105, 326 P.2d 388 (1958).

The trial court's jury Instruction No. 13 provided as follows:

It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expenses to protect his interest, such costs and expenses, including attorney's fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages.

■ It is our view that Instruction No. 14 is clear and not confusing, both when considered alone and in conjunction with Instruction No. 13. Though appellants argue that the instruction incorrectly limited the question of foreseeability to that of litigation with the Criners, rather than foreseeability of litigation involving the resale of the land in question, we must disagree. Instruction No. 13 speaks of "litigation with purchasers *such as* Porter and Clydean Criner." The clear import of such language is to draw the jurors' attention to the possibility of foreseeable litigation with potential purchasers of the land—persons such as the Criners—with whom appellants may have agreed to deal but were prevented from so doing by the alleged breach of defendants. It is our view that Instruction No. 14, especially when considered with Instruction No. 13, which delineates the nature and extent of such litigation expenses, provided the jurors a clear picture

of the damages which they were to consider awarding appellants.

### B.

Appellants also allege error with the trial court's preliminary instruction and Instruction Nos. 6, 7, 8, and 12. However, as these instructions were not objected to at the time they were given by the trial judge, we must first consider respondents' contention that a failure to object operated as a waiver of appellants' right to raise the correctness of these instructions as an issue on appeal.

The history of I.R.C.P. Rule 51(a)(1) began with its adoption in 1958. At that time, it was not necessary to object to jury instructions in order to raise an error with regard to such instructions on appeal. However, the rule was amended by order dated October 24, 1974, and made effective January 1, 1975, so as to require a party to object to the giving of an instruction or the failure to give an instruction, with the failure to timely object resulting in waiver of the right to raise any such error on appeal. Though the rule was again amended by order dated January 8, 1976, and made effective March 1, 1976, the above-stated requirement was retained.

■ However, I.R.C.P. Rule 51(a) was amended again by order dated July 2, 1976, and made effective October 1, 1976. At this time, the requirement that a party must object to jury instructions in order to preserve error for the purposes of appellate review was clearly and intentionally deleted from Rule 51(a). The trial bench and bar are reminded of our recent decision in *Country Insurance Co. v. Agricultural Development, Inc.*, 107 Idaho 961, 695 P.2d 346 (1984), where the history of the rule was reviewed at length. And though the rule was amended yet another time by order dated May 25, 1977, and made effective July 1, 1977, to require that any objections made concerning jury instructions either given or refused be made a part of the record, no affirmative obligation whatsoever was placed upon counsel to object in

order to preserve order. This, then, remains the current status of the rule, i.e., that a party may object either to jury instructions given, or requested but not given, and that such objections, when proffered, must be made part of the record, but that counsel is nonetheless not required to object to instructions in order to preserve error on appeal. As our opinion in *Country Insurance* stated, trial counsel presumably are first interested in arriving at a set of error-free instructions—which hopefully will result from the exchanges of thought by trial counsel in colloquy with the court.

*Country Insurance*, however, was not our first consideration of this problem. In *Stoddard v. Nelson*, 99 Idaho 293, 581 P.2d 339 (1978), we observed, and properly so, that, under I.R.C.P. 51(a)(1), *as it read prior to its October, 1976 amendment,* "challenges to rulings on requested jury instructions must be raised prior to submission of the case to the jury. Appellants failed to timely object to the district court's ruling. Appellants are, therefore, precluded from raising this issue on appeal." *Stoddard, supra,* at 298, 581 P.2d 339.

As counsel for Country Insurance Co. complained in their petition for rehearing, there has been some confusion attendant to the history and status of the rule, both in the district courts, in the court of appeals, and perhaps in this Court—occasioned by those instances, such as in *Country Insurance,* where all counsel involved have labored under the belief that an objection has been necessary in order to preserve error—notwithstanding the 1976 amendment. Hopefully, that confusion has now been put to rest.

We therefore proceed to a consideration of the jury instructions challenged by appellants Suitts.

### C.

■ The Suitts initially allege error in the trial court's Given Instruction Nos. 6, 7, and 8. Instruction No. 6 read as follows:

The plaintiffs have the burden of proving each of the following propositions:

1. That the defendants acted wrongfully in failing to deliver to the plaintiffs the documents held in escrow upon tender of the remaining balance of the purchase price on January 2, 1975.

2. If the failure of the defendants to deliver such documents was wrongful, that the plaintiffs sustained monetary damages as the foreseeable result of the failure to possess the documents held in escrow during the period from January 2, 1975, to March 4, 1976.

3. That any monetary damages sustained by the plaintiffs can be calculated with reasonable certainty.

4. That any monetary damages sustained by the plaintiffs were not the result of the actions of the plaintiffs themselves.

If you find from your consideration of all of the evidence that each of these propositions has been proved, then your verdict should be for the plaintiffs; but, if you find from your consideration of the evidence that any of these propositions has not been proved, then your verdict should be for the defendants.

Instruction No. 7 read as follows:

You are instructed that the duties of the First Security Bank, as escrow holder, are those set out in the escrow agreement. If you find that in holding possession of the escrowed documents until the dispute between Suitts and McMurtreys was resolved, the bank was exercising a right which it had under the escrow agreement, then the bank would not be liable to anyone for executing that right and your verdict should be in favor of the bank.

Instruction No. 8 read as follows:

If you find that in holding possession of the escrowed documents until the dispute between Suitts and McMurtreys was resolved, the Bank was required, under the Escrow Agreement, to initiate a legal action to clarify its position in relationship to the two parties, and failed to do so, and the plaintiff suffered any damages as a consequence of such inac-

tion, then your verdict should be in favor of the plaintiffs.

The gravamen of the Suitts' objection to these instructions is that the trial court neglected to adequately instruct the jury as to the legal consequences of this Court's decision in *Suitts I*, but rather left the jury to decide for itself legal issues which the Idaho Supreme Court had already settled. Specifically, Instruction Nos. 7 and 8 left to the jury the question of whether First Security Bank was acting properly by retaining the escrowed documents rather than releasing them or "initiating legal action to clarify its position in relationship to the two parties." In addition, Instruction No. 6 allocated to the Suitts the burden of proving that "defendants acted wrongfully in failing to deliver to the plaintiffs the documents held in escrow upon tender of the remaining balance of the purchase price on January 2, 1975." We agree with appellants Suitts that the trial court erred in giving these instructions to the jury; we therefore reverse and remand for a new trial.

In *Suitts I*, this Court stated the following:

The operation of the escrow contract was not stayed by the appeal perfected by the McMurtreys since the judgment of the trial court was self-executing. Upon completion of the terms of the escrow contract the Suitts had a right to the escrowed documents, notwithstanding the appeal. *Suitts I, supra*, 100 Idaho at 559, 602 P.2d 53.

In addition, our decision specifically and definitively answered the very questions posed to the jury by the trial court. As Justice Donaldson wrote for a four-to-one Court in *Suitts I*:

The escrow term providing for clarification by the second means clearly contemplates an action brought by the escrow holder for a judicial determination of its rights, powers and duties *under the escrow agreement.* The responsibility of the escrow holder to seek clarification of its duties under the terms of the escrow was not satisfied by merely hold-

ing the escrow in limbo while it awaited the outcome of an appeal in an action brought by the parties to determine *their* rights and duties under the *sale* contract.... As we previously held in this opinion, the appeal of the original action did not stay the operation of the escrow contract. Therefore, *the Suitts had a right to the escrowed documents upon fulfillment of the terms of the purchase agreement, notwithstanding the pendency of the appeal concerning whether there had been a default.* The approach adopted by First Security Bank was not in accordance with the contract provision to deliver the escrowed documents upon fulfillment of the Suitts' duty to pay the purchase price. *Suitts I, supra*, at 560–61, 602 P.2d 53 (emphasis added).

The above-quoted language stated the law of the case, and clearly conflicted with the trial court's Instruction No. 8, which allowed the jurors to determine for themselves whether the Bank was required to initiate legal action to clarify its rights and duties; conflicted also with Instruction No. 7, where the trial court instructed the jury to find for itself whether the Bank was justified in withholding possession of the escrowed documents; and conflicted with Instruction No. 6, where the trial court instructed the jurors to determine whether defendants acted wrongfully in failing to deliver the escrowed documents.

As a decision on a former appeal in this case, it is clear that our opinion in *Suitts I* represents the law of the case herein and, as such, was binding upon the trial court on remand. The Montana Supreme Court has explained the doctrine of the "law of the case" as follows:

"The rule is well established and long adhered to in this state that where, upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal...." *Fiscus v. Bear-*

tooth Electric Cooperative, Inc., 180 Mont. 434, 591 P.2d 196, 197 (1979) (quoting from Carlson v. Northern Pac. R. Co., 86 Mont. 78, 281 P. 913, 914 (1929)). In addition, we note that the doctrine of law of the case has long been the rule in this jurisdiction. See, e.g., Kerns v. Morgan, 11 Idaho 572, 83 P. 954 (1905); Unfried v. Libert, 23 Idaho 603, 131 P. 660 (1913); Richards v. Jarvis, 44 Idaho 403, 258 P. 370 (1927); Creem v. Northwestern Mutual Fire Ass'n of Seattle, Washington, 58 Idaho 349, 74 P.2d 702 (1938). Therefore, because the trial court neglected to follow the law of the case as set forth in our opinion in Suitts I, we remand for a new trial where the instructions will be consistent.

### D.

Having determined that we must remand the present case for a new trial, we must now proceed to determine all questions of law which will arise at that trial. Messmer v. Ker, 96 Idaho 75, 78, 524 P.2d 536, 539 (1974).[2] We therefore continue with our examination of the issues raised on appeal.

■ The Suitts conclude their objection to the trial court's jury instructions by alleging error in Instruction No. 12. Instruction No. 12 stated the following: "Damages are not recoverable for loss that the defendants did not have reason to foresee as a probable result of the breach when the contract was made." The Suitts argue that Instruction No. 12, when considered in conjunction with Instruction No. 14, amounted to a directed verdict for the defendants. However, we have previously considered and affirmed Instruction No. 14. See discussion supra, at p. 1378–1379. It is our view that Instruction No. 12 is naught but a general statement of the accepted rule that "the damages to which one party to a contract is entitled because of a breach thereof by the other are such as arise naturally from the breach itself, or such as may reasonably be supposed to

have been within the contemplation of the parties at the time of making the contract as a probable result of a breach thereof, or, as sometimes stated, such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract." C.J.S., Damages, § 24, pp. 662–66. Or, as this Court has previously stated:

As otherwise expressed, the damages which are recoverable must be incidental to the contract and be caused by its breach; such as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was entered into. Direct damages are always recoverable, and consequential losses must be compensated if it can be determined that the parties contracted with them in view. Lockwood Graders of Idaho v. Neibaur, 80 Idaho 12, 127, 326 P.2d 675 (1958), quoting from Sutherland on Damages by Berryman, Fourth Edition, vol. 1, sec. 45, p. 170.

See also Olson v. Quality-Pak Co., 93 Idaho 607, 610, 469 P.2d 45 (1970). The damages for which compensation is sought need not have been precisely and specifically foreseeable, but only "such as were reasonably foreseeable and within the contemplation of the parties at the time they made the contract." Though the jury instructions perhaps should have clarified the general nature of this foreseeability requirement, this small problem can readily be accommodated on remand.

### III.A.

■ The Suitts next contend that the trial court erred in denying their motion to amend their complaint. The Suitts had sought leave to amend in order to introduce a new claim for punitive damages and a tort theory of recovery.

I.R.C.P. 15(a), dealing with amended and supplemented pleadings, states the following:

2. See also I.C. § 1–205, requiring that the Supreme Court, when remanding a case for further proceedings, "pass upon and determine all

the questions of law involved in the case presented upon such appeal...."

party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. *Otherwise a party may amend his pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires, and the court may make such order for the payment of costs as it deems proper....*

In denying the Suitts' motion to amend their complaint to allege that First Security Bank did willfully or with gross negligence attempt to deprive the Suitts of the benefit of their Real Estate Purchase Agreement, Judge Walters stated the following:

The rule has been long settled in Idaho that the statute of limitations may be asserted in opposition to an attempt to amend pleadings by insertion of new or different causes of action. *Denton v. Detweiler*, 48 Idaho 369, 282 P. 82 (1929). Here the plaintiffs are attempting to amend their complaint to recover on a tort theory more than five and a half years after the original complaint was filed for breach of contract, relying upon the same conduct as being tortious as is asserted for the breach of contract claim. The proposed amendment is clearly barred by the statute of limitations, and the motion to file the Supplemental Complaint in that regard will be denied. See also *Just's Inc. v. Arrington Construction Co. Inc.*, 99 Idaho 462, 583 P.2d 997 (1978); Wright & Miller, Federal Practice and Procedure, Rule 15(a), Section 1474, p. 384.

Although it is indeed true, as respondents argue, that "[t]he decision of whether to permit amendment of a pleading is vested in the sound discretion of the trial court," *Idaho First National Bank v. Wells*, 100 Idaho 256, 261, 596 P.2d 429 (1979), we view the present ruling as a conclusion of law and hence reviewable and non-binding on this Court. *Harding v. Home Investment and Savings Co.*, 49 Idaho 64, 286 P. 920 (1930). We agree with appellant that, in relying upon the statute of limitations to bar the requested amendment, the district court apparently overlooked I.R.C.P. 15(c), and therefore we reverse the judgment of the district court on this issue and remand with instructions to reconsider appellant's motion in light of Rule 15(c).

I.R.C.P. 15(c) states the following:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading ....

In the present case, as noted, *supra*, the district court specifically stated that the tort theory with regard to which the Suitts sought to amend their complaint "relied upon the same conduct as being tortious as is asserted for the breach of contract claim." It is thus clear that it was the underlying conduct, transaction, or occurrence of refusing to deliver the escrow documents which comprised the gravamen of both the contract claim and the asserted tort claim. Therefore, the statute of limitations standing alone was not an adequate reason for denying the Suitts' motion to amend as the amended cause of action would have related back and would thus not have violated the statute.[3]

## B.

The Suitts also contend that the district court erred in denying their motion to amend their complaint to introduce a new claim for punitive damages. In so ruling, the district court stated the following:

Plaintiffs also seek to amend their complaint to recover punitive or exempla-

---

**3.** In remanding the issue of amendment back to the district court, we express no opinion on whether the district court should grant or deny the Suitts' motion on any other grounds. We merely hold that, in this case, the statute of limitations was not an adequate ground for denying the motion.

ry damages. Applying the guidelines recently set forth by the Supreme Court in *Hatfield v. Max Rouse and Sons Northwest,* 100 Idaho 840, 606 P.2d 944 (1980) and *Linscott v. Rainier Nat. Life Insurance Co.,* 100 Idaho 854, 606 P.2d 958 (1980) to the case at bar, I find that a claim for punitive damages would not be warranted and that it would be an abuse of discretion under I.R.C.P. 15(c) to allow such an amendment.

In the recent case of *Cheney v. Palos Verdes Investment Corp.,* 104 Idaho 897, 665 P.2d 661 (1983), which decision was not available to the trial court, we stated the following with regard to punitive or exemplary damages, in backing away from the main precepts of *Cox v. Stolworthy, Jolley v. Puregro,* and their progeny, of which *Hatfield* was near the end of the line:

We hold that punitive damage awards are in the first instance a jury decision, subject to the trial court's authority to modify or overturn that jury verdict as a matter of law. Such is no novel approach to the appellate treatment of a damage issue. *See Boise Dodge, supra; Checketts v. Bowman,* 70 Idaho 463, 220 P.2d 682 (1950); *Horn v. Boise City Canal Co.,* 7 Idaho 640, 65 P. 145 (1901); I.R.C.P. 59(a)(5). We have consistently held that "[p]unitive damages are by their very nature incapable of definite ascertainment and cannot be governed or measured by any precise standards." *Cox v. Stolworthy, supra,* 94 Idaho at 688, 496 P.2d at 687; *Prudential Federal Savings & Loan Ass'n v. Johnson,* 93 Idaho 850, 476 P.2d 786 (1970). "Thus, the true basis for an award of one amount of punitive damages as opposed to another amount lies in an overall appraisal of the circumstances of the case." *Boise Dodge, supra,* 92 Idaho at 908, 453 P.2d at 557. *Cheney, supra,* at 904, 665 P.2d at 668.

In addition, as we noted *supra,* leave to amend or supplement a pleading shall be "freely given when justice so requires." In construing the substantially identical federal rule,[4] the United States Supreme Court stated the following general standard to be employed by federal district courts:

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), paragraphs 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

---

**4.** Rule 15(a) of the Federal Rules of Civil Procedure states the following:

(a) **Amendments.** A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Rule 15(a) of the Idaho Rules of Civil Procedure states the following:

**Amended and supplemental pleadings—Amendments.**—A party may amend his pleading once as a matter of course at any time before a responsive pleading is served, or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty (20) days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires, and the court may make such order for the payment of costs as it deems proper. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within ten (10) days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

In commenting on this standard, Professors Charles Wright and Arthur Miller noted the following:

> Perhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading. Conversely, if the court is persuaded that no prejudice will accrue, the amendment should be allowed. Thus, the facts of each case must be examined to determine if the threat of prejudice is sufficient to justify denying leave to amend. In order to reach a decision on this point, the court will consider the position of both parties and the effect the request will have on them. This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted. Wright & Miller,

*Federal Practice and Procedure: Civil* § 1487, p. 428.

Therefore, the essential question, not considered by the district court, is whether the proposed amendment to the pleading will result in unjustifiable prejudice to the non-moving party. Because the district court did not consider the prejudicial impact of allowing the Suitts to amend their complaint to include a prayer for punitive or exemplary damages, we reverse and remand for further proceedings consistent with this opinion.[5]

### IV.

This case was originally filed in district court, but assigned to the magistrate court by District Judge Schwartzman. The reason for Judge Schwartzman's remand was the order of Judge Walters, which limited plaintiffs' claims for damages to the jurisdictional amount of the magistrate division of the district court, and also because a conflict in trial calendar scheduling had arisen. Where we now reverse Judge Walters' decision denying the Suitts leave to amend their complaint, we direct that the new trial be had in district court.

### V.

The Suitts also appeal the award of attorney's fees to First Security Bank for its expenses in defending the present action. However, in view of our holding today reversing and remanding the case for further proceedings consistent with this opinion—a holding which necessarily vacates such an award of attorney's fees—we need not and do not reach this issue.

---

**5.** Although it is often held that the substantive merits of a claim or defense may be considered if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, *see, e.g.,* Wright & Miller, *supra,* at p. 432, such is not the case here. The Suitts requested exemplary damages on the basis of their allegations that First Security Bank, as escrow holder, and the McMurtreys, as vendors, "willfully or with gross negligence attempted to deprive plaintiffs of the benefits of their real estate purchase contract," and that First Security willfully or with gross negligence

breached its fiduciary duty to plaintiffs. It is our view that these allegations, if proven, could possibly fall within the "harmful state of mind" and "extreme deviation from reasonable standards of conduct" cited by this Court in *Cheney v. Palos Verdes, supra,* 104 Idaho at 905, 665 P.2d 661, as justifying such an award. We therefore reiterate our holding, *supra,* in the absence of demonstrated prejudice to defendants, the Suitts should have been permitted to amend their complaint and offer proof as to its allegations.

*Reversed and remanded.* No costs or attorney's fees awarded on appeal.

DONALDSON, C.J., and HUNTLEY, J., concur.

### APPENDIX A

DEPOSITION OF RICHARD O. SUITTS

Q. [By Mr. Ipsen:] Do you have any specific agreement with Mr. Cresto?

A. Specific agreement?

Q. Yes. Had he agreed to buy some of the land?

A. Yes. He wanted to buy some of the land but when we couldn't get this litigation and everything resolved why he purchased other land.

Q. Did Mr. Cresto make you an offer?

A. I don't even remember that.

Q. Do you recall what price you were talking about with Mr. Cresto?

A. I don't.

Q. Okay. How about Mr. Wilson? Did you have an offer from him?

A. Nope.

Q. Did you have any other offers?

A. You mean cash offers?

Q. Yes. Did people get to the point where they offered you money for the land?

A. No, that I recall, no.

Q. Have you done any calculations to determine what the amount of the income you alleged you lost?

A. From what?

Q. As a result of litigation pending the McMurtrey's?

A. Oh, God. That's—that will take quite a bit of—you mean covering all aspects of this?

Q. Let's just limit it to sales and prospective sales of land. Are you alleging that you've lost any income because of sales which were not consummated because of the litigation with the McMurtreys?

A. No, I'm not alleging that I've lost income as such. What I'm saying is, I was deprived of my right to sell the land at the times when I really needed the money.

Q. Alright.

A. I'm not speaking of future income or anything. And as far as discussing with people when I was in one lawsuit, the chance of selling them a piece of property that was in litigation, my nerves or nothing else could take that. So, I didn't even discuss this with most of them.

Q. Okay. Are you alleging any damages because you didn't sell land to Mr. Cresto?

A. No, not specific damages.

Q. Okay. How about Mr. Wilson?

A. Not specific damages, no. What I'm alleging in all of these now, and I'll repeat it again is the fact that I was denied the opportunity and the right to sell it to anybody at the time that I really needed to sell it because I needed the money.

Deposition of Richard O. Suitts, p. 33, L. 9 through p. 35, L. 7.

Q. But, you didn't have any specific sales agreed to? Is that right?

A. Did I have any offers drawn up that would commit me to give them the title for X number of dollars? No, I didn't.

Q. Did you have any specific offers that you would have taken had you had title?

A. No.

Deposition of Richard O. Suitts, p. 36, L. 3–9.

Q. Did Mr. Campbell make you an offer on the land?

A. I don't think he ever did. I don't think it ever got that far.

Q. Did you make him any kind of offer?

A. I don't think so.

Q. I take it there was no agreement?

A. No.

Q. Did you discuss price with Mr. Campbell?

A. I think, Mr. Ipsen, I answered. I said that at no time did I get any written offers, or did I make any written offers, or any offers of any kind to anybody on any of that land at any time.

Q. I think—well, my question was did you discuss the price with Mr. Campbell.

A. No, I don't think I did.

Q. Okay. So, do you have any idea whether Mr. Campbell would have been willing to pay the price you wanted?

A. I would assume he was.

Q. Do you have any positive indication that he would have?

A. Well, he bought property.

Q. Well, did he give you any indication that if he—that he would pay the price you wanted?

A. Never asked.

Q. And would that be true of other people too?

A. That's exactly right.

Deposition of Richard O. Suitts, p. 50, L. 4 through p. 51, L. 4.

BAKES, Justice, dissenting:

The majority's holding that the jury instructions Nos. 6, 7 and 8 are contrary to the "law of the case," as established in *Suitts I*, is in contravention of our standards of appellate review. Therefore, for the reasons set forth in my initial dissent in *Suitts I*, 100 Idaho at 562, 602 P.2d 53, and for the additional reasons set forth below, I respectfully dissent.

It is important, at the outset, to note the posture of the case before the Court in *Suitts I*. In *Suitts I* appeal was taken from summary judgment entered in favor of defendant respondents McMurtreys and First Security Bank. Therefore, our review was limited to a determination of whether or not there were no genuine issues of material fact such that the respondents were entitled to judgment as a matter of law. I.R.C.P. 56(c). The Court was not called upon, and therefore did not determine whether or not appellants, Suitts, were themselves entitled to summary judgment.

Implicit in the holding of *Suitts I* that summary judgment was improper as to First Security Bank (the escrowholder) is the concomitant holding that material issues of fact existed as to the escrowholder's duty under the circumstances to release the escrow documents in its possession.

The majority now would convert that holding into an award of summary judgment in favor of Suitts as to First Security Bank, *i.e.*, a *de facto* award of summary judgment on appeal, without that issue being raised either in the trial court or on appeal. I fail to see how the Court may do so and at the same time maintain the integrity of traditional standards of appellate review.

Since the law of the case is not as the majority contends (indeed, the only law of the case in *Suitts I* is that material issues of fact did exist), the issues of fact treated in jury instructions 6, 7 and 8 were properly entrusted to the jury for resolution and their findings should be upheld on appeal.

SHEPARD, J., concurs.

ON PETITION FOR REHEARING

BISTLINE, Justice.

Respondent, First Security Bank of Idaho, has petitioned the Court for a rehearing. After full consideration the Court has determined that a rehearing is not in order, but that on one point raised by the petition and supporting brief the majority opinion should be modified.

Accordingly, we now hold in Part IIIB that the district court was correct in its ruling denying the plaintiffs leave to amend so as to pursue a claim for punitive damages. We perceive this to be so under the guidelines of *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). In all other respects the September 27, 1985 opinion for the Court remains intact. A rehearing is denied.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD and BAKES, JJ., concur in the modification of the majority opinion, but otherwise continue to adhere to the views expressed in the September 27, 1985 dissenting opinion of BAKES, J.